And we'll hear counsel in Aesett v. Aetna Life Insurance. Good morning, Your Honors. My name is Adam Hansen on behalf of Plaintiff Appellant Sharon Aesett, and may it please the Court. The District Court erred in concluding that Appellee Aetna Life Insurance's Appeals Nurse Consultant position qualifies for the Fair Labor Standards Act professional exemption. This Court, respectfully, should follow the Fifth Circuit's decision in Clark v. Centene, the leading appellate decision on this precise issue, and hold that such employees are not exempt from the Fair Labor Standards Act overtime requirement. Under the professional exemption, there are two problems with respect to the governing statute and implementing regulations, the first pertaining to the duties that these employees perform, the second pertaining to the minimum educational requirements required for this position. Beginning with the duties, the essence of this job is to take medical information gathered in a clinical setting by doctors, nurses, et cetera, and apply that information to extraordinarily detailed clinical guidelines to determine whether those guidelines are satisfied for the purpose of accepting or rejecting a request for insurance coverage. Well, then could I do that job? You, with the proper training, one year of LPN vocational education, I believe you and I could do that job. But they don't let LPNs make these kind of decisions which allow them, allow the grant alone. That only, they only allow registered nurses to make that decision, as I understand it. Correct with a qualification. So this company does employ both registered nurses. I understand that, but approving the benefits on their own is something that only RNs can do, am I right? You are correct to a point, if I can make one follow-up point about that. That's the only formal distinction, for example, in the job descriptions between the two. That's a pretty significant, that's a pretty significant trust that's been given to the RNs that's not given to the LPNs. I'm not sure I would agree with that characterization. The job is to look at the guidelines, look at the clinical information, and determine whether the guidelines have been clearly satisfied. But you're suggesting that could be done by, that that's something that could be done by computer when, in fact, the record may explain that the parties themselves view this as something that requires judgment call based on a case-by-case review. I would never suggest that this could be performed by a computer, and that's an important point to make. And I want to come back to the prior question, but let me get to this one first. The idea that a job requires human intervention, that is not the touchstone of whether discretion or independent judgment exists. It's human judgment as to, that required unique training. It's human intervention. I mean, we require human beings to perform lots of jobs that don't qualify for the professional or administrative exemptions under the Fair Labor Standards Act. The tests speak to making a decision based on guidelines within a narrow range of options as being non-exempt work. So it's not, it's not that everything that's not robotic is exempt. The test doesn't, doesn't frame itself in that way. But if I could return to your original question, there's a very important point here. Whereas the distinction that Your Honor identified is the only formal distinction in the record, what we found in discovery is that even that formal distinction falls away. The company allows the lower level LPN nurses, the vocational nurses, to in fact approve benefits when they find the criteria are satisfied. And this is done by essentially borrowing the login credentials of other nurses and making that determination. This is a job performed by hundreds of people. I thought they did that only in an emergency or where they, where they, they needed to make a decision that this wasn't a practice. The record shows that it happened more than once and it happened in this. More than once does not make it up. Well, the question here respectfully, Your Honor, is can they do it? You know, it's not do they do it all the time? It's can they do it? And so if, if you do it, it's a proof of concept. Can they do it as well? I beg your pardon? Can they do it as well? As well as a licensed nurse? I, I'm not sure the answer to that question, but I, I would not consider that question to be a material one. If the duties suggest that in practice, these lower level LPN nurses can do it, then that suggests that the duties are such that, that, that the nature of the job functions themselves are not ones encompassed by the professional exemption. Let me. I have a question that's. Sure. In terms of practice, one gets time and a half, the practical nurses and the, and the, and the licensed nurses are on salary. Correct. As a practical matter, who makes, what is the difference in their annual salary? In other words, is there a meaningful difference between the, the licensed nurse who, who does not get time and a half and the practical nurse who does? So the best answer, unfortunately, is the precise answer to that question is not in the record. What is in the record is there was complaints from the RN nurses about this, what they viewed as the artificial distinction the company had drawn precisely because in felt that the, that the, the ANA, the LPN nurses were making more money. The RNs do make, their salary is higher than the LPNs, correct? Well, the LPNs don't have a salary. So one has a salary, one has an hourly rate. You just get the amount that you work per hour plus the time and a half on all hours over 40. So whether one would be higher than the other would depend upon the number of hours worked in a given week and so forth. And are your clients looking to go on an hourly basis? Yes, yes. Hourly with overtime. This is a job that is very production based. This is a job where there is intense pressure to have turnarounds to get your files resolved. Over 1,000 files considered per week by over 100 employees. This is a pressure cooker of an environment. And, you know, this point in the, this court's Davis case, which was an administrative exemption case, they really looked at that and said the fact that work can be measured and benchmarked and tested and audited in such a fashion is typically a dead giveaway that this is not a white collar position where such benchmarks and measurements are, are more difficult to measure. With respect to, with respect to the duties, the audits, I think in this case, are one particular fact that is highly relevant with respect to the fact that, that this is not a question of pure discretion and judgment. The company looks at the results of the cases these nurses review and, and basically test them on a limited basis to determine whether those decisions were correct or incorrect. Is that for denials as well? Is that for, for authorizing payment as well as denials? I thought they, the denials were reviewed. Well, this is, what I'm, what I'm speaking of is something separate. So denials are reviewed in every single case. So if we find, hey, this claim should be denied, that goes up to a doctor for further review. In addition to that, the company has auditing procedures where it will simply grab a random sample of cases, look at those cases and try to determine whether the result was correct or incorrect. And the nurses are expected to maintain essentially a correctness score of 95%. So certainly there can be diverging outcomes. But it's very important in this industry that, as the Fifth Circuit said in the Centene, in the Clark v. Centene case, to wring as much discretion out of this system as possible. Aside from this litigation, it's very bad from a regulation perspective, an insurance policy perspective, and an accreditation perspective for two identical cases to be treated differently. That's why at this level with the nurses, the entire point is to make the job the application of the guidelines. And as the regulations state, simply applying well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response is a non-exempt function under both administrative and professional exemptions. I see that my time has expired. I'll reserve my time for rebuttal. Thank you. MR. LAMPEY. May it please the Court, I'm Matt Lampey. I'm with Jones Day. I represent the employer Aetna. Let me just take immediate issue with the notion that the Centene case and this case are the same. They're actually diametrically opposite cases. The regulations presumptively say RNs qualify as professionals, and LPNs do not. That's the general rule, subject to some exceptions. This case involves an RN. MR. NEUMANN. That may very well be true in terms of, you know, rendering patient care in the sense that we would. And that may very well be true to the extent that they render patient care and they take care of patients. But this is not precisely that job. They're simply looking to determine whether a particular procedure should be authorized or paid for by the insurance company. MR. LAMPEY. Your Honor, the regulation that talks about RNs and LPNs does not limit the guidance to the clinical setting. The regulation says RNs who are licensed by the State Board are presumed to be professionals. And that LPNs who are not, do not carry an RN license are presumed not to qualify for the professional exemption. So that regulation is not tied in any way to whether the work was in a clinical setting or not. And the Sentine case, the plaintiffs in the Sentine case were LPNs. And the employer in that case had classified LPNs as exempt, even though the rule is that they don't qualify. And the part of the Sentine decision that deals with the professional exemption, it's very straightforward. The Fifth Circuit said LPNs do not have, they don't satisfy the third prong because they do not have a, their degree was not obtained through a prolonged course of specialized intellectual instruction. That's black and white. That's true. And the employer in that case argued, well, the LPNs had experience that would bridge the gap and would qualify them to be the equivalent of RNs. And the Fifth Circuit said, no, the Department of Labor has commented on that, specifically with respect to LPNs, and has said that additional experience does not bridge the gap. That's the sum and substance of the Sentine case with respect to the professional exemption. There's discussion in Sentine about the administrative exemption, but it's very straightforward what the Court said there about the professional exemption. Scalia. Does the Department of Labor address the specific issue in this case? Feigin. Pardon me, Your Honor? Has the Department of Labor addressed the specific issue in this case? Feigin. Not in this specific context, to my knowledge, Your Honor. Scalia. Should we ask for their views? Feigin. I don't think that's necessary. I think the record is very straightforward. The parties have agreed. There's no disputes of fact. Judge Chotny below has found that the plaintiff fits within the professional exemption, and I think it's apparent as a matter of law. Now, if I could explain just a little bit and highlight a few points about that, this case focuses on the first prong of the professional exemption, which is, was the RN degree necessary to do the job? And this Court's Pippin case gives very useful guidance about what it means for that first prong to be satisfied. When is it satisfied? The advanced knowledge prong. And what Pippin says is it's really two things. Does the employee rely on the knowledge of the profession, the advanced knowledge of the particular profession? And the second part is to exercise discretion and judgment that is characteristic of the field. We would submit respectfully that the evidence in this case, and in particular the plaintiff's own description of how she performed her job, places her very squarely within the context of satisfying the advanced knowledge prong, the first prong of the exemption. She admits very candidly that she does draw on her nursing education and her nursing experience in assessing patients' health status and in deciding what, whether certain treatments are medically necessary or not, and in applying the criteria that helps make that decision. And it's not at all surprising that she would have to use her nursing background and education when one focuses on the types of decisions that she's making, and these are outlined in the record. So, for instance, Ms. Isot has to decide whether there is a substantial worsening of comorbid conditions. When the criteria, the guidelines do not spell out when, what comorbid conditions should be considered or what constitutes substantial worsening. That's a judgment call that the RN has to make. And she's admitted that she draws on her RN education and experience to make that medical judgment call. That's far from surprising. Another example in the record is that she has to decide whether the patient, whether the record would reflect that the patient's physiologic status is stabilized. When there's no detail about what would constitute a stable physiologic status, that's a judgment call. I understand the point you're making, but you have to do all of that to deny. Whether you approve or deny, all of this has to be analyzed, yes. You have to engage in the exact same type of analysis. That's correct. Just that the company, you know, before there's a grant, perhaps, the company wants some greater assurance. No, that's exactly the opposite, Your Honor. The company allows the RNs to grant the benefits without any approval from a doctor. And that's a very important point to understand. The RN is vested and entrusted by Aetna to make a decision to grant benefits, find that certain medical services are covered without any approval from above. That's important. If the RN decides that the services are not covered, in other words, is going to deny the benefits, that decision has to be approved by a doctor. But that's a very important distinction because the LPNs are not vested with the authority to make independent decisions. In either case, which is perfectly consistent with the nurse practice acts, that... Your adversary says the record doesn't support that. Well, and let me... Or at least that the practice has become that LPNs are doing it. Let me address that, Your Honor. I appreciate you bringing that up. That argument is based entirely on an email that's in the record involving Sharon Saravia, who was the head of this unit. Ms. Saravia was deposed in this case. All the other people on that email chain were deposed in this case. And no one was asked about what this email means. And our position is that the email by no means would allow a non-speculative conclusion that this... That it establishes that LPNs are allowed to make determinations about medical necessity. The very beginning of that email, a person is questioning Ms. Saravia and saying, would you consider these files? And then could a ANA make the final, you know, enter the final information? Ms. Saravia has access to all of these files. She's the supervisor of the department. There's nothing on the face of that email to suggest that she did not review these files, but was delegating to others the process of going on the computer, going through the various machinations, and actually entering the approval. It's completely speculative for a plaintiff to argue that this email suggests that this is a departure from the normal rule. There's just, there's nothing in the record that would suggest that. This may be irrelevant to the final, the ultimate disposition of this case, but to go back to a line of inquiry by Judge Corman earlier, in connection with the oral argument of your adversary, I take it that the LPNs have overtime and they're obviously doing very much better than the registered nurses. I mean, why would a registered, to put it another way, why would a registered nurse, in your view, wish to be exempt from the Fair Labor Standards Act exemption? There's benefits to being salaried. If you're a salaried employee and you take time off and you, you know, you're sick or you take your kids to a game, you're going to get your salary, no matter how many hours you work in a particular week. If you're hourly, you get paid on an hourly basis, you have to earn every penny that you make, so to speak. So being salaried is considered to be a valuable classification by many people. The tradeoff is salaried employees don't get overtime, but the law tells us that what determines whether an employee is entitled to overtime or not is whether one of these exemptions is satisfied. And in this case, again, our position is that the plaintiff fits very comfortably within the professional exemption. She is making the decisions that nurses make, she is making those decisions based on her education and her training, and they're very consequential, as the Court can certainly imagine, to patients who are seeking, in some instances, very substantial, substantially expensive medical care. And that decision is a... Do you know that they're dealing with an RN rather than an LPN? Do the patients even know? I don't know that the record specifies that, but certainly the RN is the one... Why are you arguing it to us? I mean, why would we even consider that fact if it's not in the record? Because it shows that the company is entrusting the RNs with the type of decision making that professionals... It's the company's view, but if patients don't know it, you can hardly ask us to consider whether patients would have a different view of things. I don't know whether... All right. I just made it as an observation. Right. Okay. Thank you. Thank you. Can I ask you, is it clear that the record does not show who comparatively is making more money? I agree with that. And I do also agree that... Why isn't that an important fact? Suppose the licensed nurse was coming out better than the practical nurse. Wouldn't that be a relevant fact? Well, legally what's relevant when it comes to pay in cases like this is whether or not the employee who's classified as exempt, as the plaintiff was, meets the minimum salary requirement, which in the regulations is $455 a week, I believe is the minimum. Ms. Isett was well, well above that minimum salary requirement. So once that threshold is cleared, then the compensation that the employee makes is taken off the table and is no longer relevant. Thank you. Thank you. Mr. Hanson, you're up. I'd like to focus my rebuttal on the education prong, the minimum educational requirement to perform this job. First, to clear up a misconception or a misstatement about the Clark versus Centene case. That case, like this case, also involved a company that used a mixture of LPN and RN nurses. The difference there was there was no formal distinction. They were just all lumped into the same pot. Here, of course, we have the formal distinction between the two with the one formal distinction the company has drawn that is, of course, not honored in practice all the time. I would also point the Court, obviously non-precedential, to the recent Rigo decision from the Western District of Wisconsin. This is a decision cited in our reply brief. It came down after our principal brief. But it's really the most thorough of all the decisions, district court or circuit court, on this question. And I point it out simply because in that case, it was purely an RN position. That company didn't even hire LPN nurses. And the Court still concluded that because the minimum qualifications required to do the job was an LPN position, that that defeated the application of the exemption in that case. So to here. Kennedy, do you think we could benefit from the views of the Department of Labor? I agree with my co-counsel that that's not strictly necessary. It's always nice to hear what the Department of Labor thinks. But respectfully, I think from the perspective of our clients, we're looking forward to getting a decision on this and moving forward with the case in the event that we prevail here. I'd last address just this point of the practical breakdown of this formal rule. Please just rely on the record. If anything, the inference on their side is the one that's weak. You read these documents, and there were witnesses that were questioned in depositions, and it's all about, if you're comfortable with this, let's do it again like we did last time. You can use my name. Here are my credentials. Yes, we can nurse approve with this LPN position. The text and the subtext just absolutely leap off the page to make it clear that this was happening. And as I suggested earlier, it doesn't matter whether it was happening all the time. If it ever happened, and it happened more than once, we know that the minimum qualification for this position is the one year vocational nurse. And just as none of the persons involved in this questioned about it when they were deposed, that's what your adversary said. Is there a reason that this wasn't fleshed out? They just said, well, that would be contrary to our policies. I'm paraphrasing as best I can. As I understand it, the supervisor was deposed. Some of the nurses were deposed. Correct. Were they asked about it? And did they confirm that it was being done as you're urging? The only deposition testimony that I can recall, I don't believe it was asked of the nurses because that would have been the other side's deposition, but the only deposition I can recall was of a corporate manager. He was confronted with this information, and he said, this would be contrary to our policy. I would assume that if someone's name was used to approve that that person did it, that would be our standard operating procedure. Simply not willing to confirm nor deny, Your Honor, the factual existence that this was going on. But read the documents, and certainly at the summary judgment posture, if not just a common-sense posture, it's clear that this was happening. I would ask the Court to do that. Sotomayor, I'm not finding it quickly. In Clark, where the Court treated or the case managers could be LPNs, vocational or RNs. In Centene? I'm Clark v. Centene, yes. Clark v. Centene. Yeah. It should be in the opinion. No, I have it. I'm going to ask you a question, but I have the opinion right in front of me, and I'm not finding the answer right away. Were those employees able to approve benefits without anyone, without a supervisor also taking action? Yes, and that was actually the point I wanted to make. I just wanted to make sure that that was, my memory was correct. They could. And so essentially what you have, this is the last point and I'll sit down, is in this case you've essentially removed a duty from the LPNs, but that cuts in our favor certainly, because if the LPNs and the RNs together could make the decision in Centene at the competitors and in practice here, that all shows that this job required an LPN degree and nothing more. I'd ask the Court to reverse the district court's judgment. Thank you. We reserve the decision.